**Marian Aldena DAYE, Appellant,**

v.

**Patricia R. HARRIS, Secretary, Department of Health and Human Services.**

No. 79–2371.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1980.

Decided Jan. 15, 1981.

---

June D. W. Kalijarvi, Washington, D. C., for appellant. Mark Andrews, Washington, D. C., also entered an appearance for appellant.

Regina C. McGranery, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Michael W. Farrell and Diane M. Sullivan, Asst. U.

S. Attys., Washington, D. C., were on the brief, for appellees.

Before MacKINNON and WALD, Circuit Judges and JUNE L. GREEN *, United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge.

Ms. Daye, a white Clinical Specialist in psychiatric nursing at St. Elizabeths Hospital, instituted this action under Title VII of the Civil Rights Act of 1964 [1] alleging that she was the victim of racial discrimination in the course of her employment at the hospital. Specifically, Daye alleged that she was not selected for two positions at St. Elizabeths Hospital because of her race in violation of Title VII, 42 U.S.C. § 2000e–16(c). She requested relief in the form of retroactive promotion, back pay, and benefits. The district court found that Daye failed to make out a prima facie case of racial discrimination under Title VII and granted judgment to the defendant. Daye now appeals from that district court decision. Because we conclude that the district court applied an inappropriate legal standard in ruling that it was critical for the plaintiff-appellant to prove discriminatory motive on the part of the defendant-appellee as an element of her prima facie case,

we reverse the decision and remand it to the trial court for reconsideration.

I

This suit revolves around the allegedly irregular procedures by which Ms. Meyers, a black Supervisory Psychiatric Nurse at St. Elizabeths, was promoted first to the position of Temporary Associate Division Chief Nurse ("TADCN") and then to the post of Division Chief Nurse ("DCN") in the Division of Medical and Surgical Support Programs ("MSSP") at St. Elizabeths in October, 1975 and June, 1976, respectively. Daye argued below that the retiring DCN, Areta Ludke (white), and the Medical Director of MSSP, Dr. Eleanor Makel (black), conspired to rig the Hospital Merit Promotion Plan ("HMPP")[2] so as to elevate Meyers, a black R.N., into the DCN post ahead of Daye, a white nurse with two master's degrees, and other more qualified white nurses.[3]

According to Daye, the scheme to promote Meyers began in 1973 when Ludke removed Meyers from the night shift so that she could take advantage of training programs. However, no blatant favoritism was shown until 1975, when Ludke became seriously ill, leading to her early retirement on disability in August, 1975. Daye alleged that at that time Ludke and Makel undertook a campaign to simultaneously increase Meyers' QRB score by granting her favorable work experience[4] and awards,[5] while

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. 78 Stat. 241, 253, *as amended by* 42 U.S.C. §§ 2000e *et seq.*

2. The HMPP requires that each applicant for a position be evaluated, and scored numerically, by the hospital's Qualifications Review Board ("QRB"). The person with the highest score receives the promotion.

3. Five nurses applied for the DCN post. One nurse, Mary Clark, also white, scored higher than Daye on the criteria evaluated by the QRB. Both scored lower than the selectee, Meyers. J.A. 38 (Proposed Disposition of EEO Complaint). Meyers, Clark and Daye, again ranked in that order by the QRB, applied for the TADCN position. *Daye v. Califano*, Civ. No. 78–0476, slip op. at 7 (D.D.C. Sept. 21,

1979); J.A. 11. Clark's presence, or rather nonpresence, in this case is troubling, as the evidence indicates that it is she, and not the appellant, who may have suffered most directly from the alleged discrimination. When reevaluating the case on remand, the court should consider whether this case should be resolved as was *Marotta v. Usery*, 629 F.2d 615 (9th Cir. 1980) (plaintiff denied recovery under 42 U.S.C. § 2000e–5(f) because in the absence of discrimination, another more qualified applicant would have been chosen for vacancy).

4. Ludke was absent from work due to illness from April 15 to July 24, 1975, and again from August 21, 1975 on. The TADCN position was not filled until October, 1975. Meyers was the only nurse designated as Acting MSSP DCN during Ludke's absences, though at least Daye and Clark were eligible for the position. Con-

reducing the scores of her closest competitors by downgrading their performance evaluations.[6]

This "scheme" worked. Meyers scored highest on the HMPP criteria, and the QRB selected her for both the TADCN and DCN positions. Daye filed an administrative complaint with the EEO following her non-selection for the TADCN position, alleging that she had been the victim of racial discrimination. It was amended to include the alleged discrimination involved in her non-selection for the DCN post, and her rating on her next performance evaluation. After the administrative proceedings terminated unfavorably to her position,[7] Daye initiated this lawsuit.

Daye presented these facts and a chart showing that black nurses at St. Elizabeths received a disproportionate number of promotions[8] to the trial court as evidence of her racial discrimination claim. The defendant countered with evidence that Daye lacked experience in acute medical care, had no recent supervisory experience,[9] and had had both personal and professional difficulties with Ludke.[10]

## II

The district court, after making detailed findings of fact, entered judgment for the defendant on the ground that plaintiff failed to present a prima facie case of racial discrimination. Pointing out that the Su-

---

flicting testimony existed as to whether other nurses were offered and/or accepted rotations into the temporary position; the district court found that "[o]ther employees, white and black, were offered the opportunity to receive experience in this capacity during this period." *Daye v. Califano, supra,* slip op. at 6; J.A. 10.

5. Ludke and Makel nominated Meyers for an award based on her performance as Acting DCN between April and July, 1975, which she received subsequently. *Id.*

6. Ludke returned to work from sick leave on Sept. 4, 1975, to fill out annual evaluation forms. Ludke awarded Meyers a score of 10.-55, Daye 6.99, and Clark 6.8. Daye's previous evaluation scores had been 10.5 (4/74), 11.7 (6/73), and 10.8 (2/72). Clark's previous evaluation score was 9.3 (4/74). Brief for Appellant at 6. Ludke explained the differentials as the result of a change in the scoring method used, Trial Transcript ("Tr.") 517; J.A. 20A; however, both Daye's and Clark's scores returned to or near their previous levels in the next evaluation, performed by Meyers. J.A. 73, 75.

7. The administrative investigation substantiated Daye's charges that Meyers had been pre-selected for the TADCN and DCN positions; however, the investigator concluded that this discrimination was due to factors other than race. J.A. 70 (Proposed Disposition of EEO Complaint). Moreover, the investigator pointed out that if it had not been for at least one of the alleged discriminatory acts (downgrading the DCN position to GS 13/14 from GS 14 to render Meyers eligible under Civil Service rules), Daye would not have been eligible for the position. *Id.* at 64–65.

8. The chart showed that between January, 1975 and July, 1976, 92% of the MSSP promotions

went to the 68% of the nurses who were blacks; only 8% of the promotions went to the white nurses though they constituted 32% of the staff. Brief for Appellant at 8. However, another chart of MSSP promotions shows that the racial composition of promoted nurses varied widely between years; 50% white from 7/74–12/74, 7% white from 1/75–12/75, 10% white from 1/76–7/76. J.A. 76.

9. Daye was a clinical specialist in psychiatric nursing at St. Elizabeths, a position devoid of supervisory and administrative responsibilities. Tr. 516; J.A. 20 (testimony of Ludke). Her last supervisory position had been that of head nurse in 1961–62. *Daye v. Califano, supra,* slip op. at 3; J.A. 7. Moreover, her position involved almost exclusively duties in the rehabilitative portion of the St. Elizabeths complex. By her own admission, Daye had no advanced training in or extensive contact with the provision of acute medical care. Tr. 50, 60–62.

10. Both Daye and Clark disliked Ludke's "autocratic" style of supervision, and had openly disagreed with her on several occasions. Tr. 102 (testimony of Clark); 140 (testimony of Younger, retired DCN). These personal considerations had especial significance because St. Elizabeths was undergoing an administrative transformation during the period in question. The medical staff had recently reasserted control over the nursing staff, a fact resented by some of the more experienced nurses. There was some evidence indicating that Meyers' promotion was related to this "palace coup" in that Meyers was receptive to this new regime while Daye and Clark opposed it. *See* Tr. 240–41 (testimony of Nagel, former EEO officer for St. Elizabeths); Tr. 344 (comments of presiding judge).

preme Court requires a plaintiff to prove "that the defendant engaged in actions from which it can be inferred that it is more likely than not that such actions were based on one or more discriminatory criteria forbidden by Title VII of the Civil Rights Act," *Daye v. Califano, supra,* slip op. at 10–11; J.A. 14–15, the court held that plaintiff-appellant failed to meet this standard because "[t]here is no evidence from which it can be inferred that it was more likely than not that racial considerations were involved[.]" *Id.* at 11–12; J.A. 15–16.

Daye appeals from this judgment, arguing that as a matter of law, she met the requirements for a prima facie case articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Appellant 'contends that she need not show evidence of impermissible racial considerations to present a prima facie case; rather, a claimant need only meet the specific burdens set out in *McDonnell Douglas*:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824. Once this burden has been met, appellant avers, the court *must* infer that, more likely than not, racial discrimination exists. At that point, the burden shifts to the defendant to disprove that inference.

In this case, appellant maintains, the criteria established in *McDonnell Douglas* have been met.[11] Therefore, the trial judge should have evaluated not whether Daye presented independent evidence of impermissible racial considerations, but rather whether the appellee's evidence of the lack of such impermissible motivations was sufficient to overcome the presumption raised by the establishment of a prima facie case. Further, appellant claims, the evidence presented by the appellee was insufficient as a matter of law to overcome the inference of racial discrimination. Thus, Daye asks this court to reverse the trial court and enter judgment, with appropriate damages, in her favor.

### III

This court outlined the components of a prima facie case under Title VII in its recent decision in *Aikens v. United States Postal Service,* 642 F.2d 514 (D.C.Cir.1980). *Aikens* makes clear that "the prima facie case in a suit alleging individual discrimination does not require a showing of discriminatory motive." *Id.,* at 520. Rather, this court concluded that "[i]n essence, *McDonnell Douglas* requires an individual bringing suit under Title VII to demonstrate that the alleged discrimination did not result from a lack of qualifications or the absence of a vacancy in the job sought." *Id.,* at 517. This prima facie case "raises an inference of discrimination," shifting to the government the burden of "meet[ing] [the plaintiff's] prima facie showing by articulating a legitimate, nondiscriminatory reason for its failure to promote [the plaintiff.]" *Id.,* at 520.

---

11. *McDonnell Douglas* involved an allegedly discriminatory refusal to hire. The formula contained therein thus does not precisely apply to a claim, like Daye's, of discriminatory refusal to promote. However, the Court in *McDonnell Douglas* expressly provided that courts could adjust the definition of a prima facie case and the allocation of burden of proof to other factual situations implicating Title VII rights, 411 U.S. at 802 n.13, 93 S.Ct. at 1824. A panel of this circuit recently described the adaptations necessary to apply the *McDonnell Douglas* formula to cases of discriminatory refusal to promote:

> Thus to make out a prima facie case the plaintiff must show that she belongs to a

protected group, that she was qualified for and applied for a promotion, that she was considered for and denied the promotion, and that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied. *Bundy v. Jackson,* 641 F.2d 934, at 951 (D.C. Cir.1981). Daye proved that she was qualified for the position, that she was rejected, and that the defendant chose a similarly qualified applicant of another race. That she is white is no impediment to this suit; white employees are protected by Title VII. *See McDonald v. Santa Fe Transportation Co.,* 423 U.S. 923, 96 S.Ct. 264, 46 L.Ed.2d 248 (1975).

If the government overcomes its "burden ... 'of proving that [they] based [the] employment decision on a legitimate consideration, and not an illegitimate one such as race,'" *id.*, at 520 (*quoting Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)), the plaintiff then has "the opportunity to introduce evidence that the justifications offered by the [defendant] are merely pretexts for discrimination." *Id.*

Thus, the district court clearly erred in holding that "there is no evidence from which it can be inferred that it was more likely than not that racial considerations were involved[.]" *Daye v. Califano, supra,* slip op. at 11–12; J.A. 15–16. Appellant's failure to present direct evidence of illegal racial motivation did not preclude her from meeting the burden of establishing a prima facie case. A court must infer the requisite impermissible motivation, as in *Aikens,* from evidence of actions meeting the *McDonnell Douglas* criteria. The government has never disputed that Daye presented that necessary quantum of evidence.

## IV

A prima facie showing does not in itself prove illegal discrimination, but rather "is simply proof of actions ... from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 579–80, 98 S.Ct. 2943, 2950–51, 57 L.Ed.2d 957 (1978). Though the burden of persuasion always remains with the plaintiff in Title VII cases, the burden of going forward with the evidence shifts to the defendant once the plaintiff makes a prima facie showing. *Bundy v. Jackson, supra,* at 950.

In this case, on this record, it is impossible to conclude with certainty that the trial court found that the appellee suc-cessfully met her burden of going forward with the evidence.[12] Since the trial court applied an erroneous standard of law and concluded that appellant had not established a prima facie case, it never explicitly made findings on whether appellee's evidence was sufficient to meet the burden of articulating legitimate reasons for Meyers' selection. Thus, although the court found "there was no evidence from which it can be inferred that it was more likely than not that racial considerations were involved" in Meyers' selection, *Daye v. Califano, supra,* slip op. at 11–12, we cannot tell from the record if this means that it found appellee submitted sufficient evidence of a legitimate justification for choosing Meyers over Daye to rebut the prima facie case, or simply that it concluded that appellee did not have to make such a showing because appellant had not made a prima facie showing in the first place. If the trial court meant the former, and in addition did not credit any of appellant's evidence tending to show that the appellee's justification was merely a pretext for racial discrimination, the judgment must be in appellee's favor. If, however, it meant merely that the appellant had not made out her prima facie case, it must go on to evaluate the appellee's case to see if it meets the required burden of showing a legitimate justification for the selection.

In short, as a matter of law, evidence existed from which it can be inferred that it was more likely than not that racial considerations were involved. To sustain its judgment, the court must find that the appellee produced sufficient evidence to rebut this inference, however weak. The findings of the court below do not conclusively reflect that the defendant met this burden because the court failed to assign the initial inference any weight in its calculation of the outcome. It is therefore possible that the trial court's error of law affected its decision in this case. Therefore, we must remand the case for reconsideration in light of the appropriate burdens of persuasion and production of evidence.

12. It is also impossible for us to conclude, as appellant contends, that Daye is entitled to a favorable judgment as a matter of law. Many disputed factual issues are relevant to the outcome of this case; decisions as to the credibility of various witnesses are also crucial to it.

## V

In *Aikens,* this court remanded the case to allow the government to offer proof of the legitimacy of the promotion decisions at issue, and to allow the appellant to introduce evidence tending to prove that those reasons were mere pretexts for discrimination. At 520. In this case, however, both sides presented this evidence at the initial trial.[13] Therefore, all the court need do on remand is review the evidence already submitted and decide a) whether the government successfully met its burden of going forward with evidence of articulable, legitimate reasons for the promotion of Meyers and, if so, b) whether the appellant successfully met its burden of proving those reasons were pretexts for illegal discrimination.

*Reversed and remanded.*

---

**13.** The defense introduced evidence that Meyers had been chosen over Daye because she had more supervisory and acute medical care experience. Tr. 515–16. Plaintiff was allowed to introduce evidence as part of her case in chief that Daye's experience in both areas was adequate, and furthermore, that neither had been posted as necessary prerequisites for the job. The court expressly admitted this evidence for its rebuttal value, as it tended to show that any legitimate reasons that could be articulated by the defendant were mere pretexts for discrimination. *See* Tr. 162–63 (colloquy between lawyers and court). The court twice denied appellee's motions for a directed verdict because "I think the Court and the Plaintiff is entitled to have some judgment as to whether there were non-discriminatory reasons, whether there was a decided and determined effort on the part of administration to have a black Chief Division Nurse[.]" Tr. 496. Therefore, each party had a full and fair opportunity to present all of the relevant evidence at the first trial.