Casper Eugene **HARDING**, Appellant,

v.

Vincent **GRAY**, et al.

No. 92–7211.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 1, 1993.

Decided Nov. 26, 1993.

Michael A. Carvin, Washington, DC, argued the cause for appellant. With him on the briefs were Michael P. McDonald and Joseph A. Shea, Jr.

Sheila Kaplan, Asst. Corp. Counsel, Washington, DC, argued the cause for appellees. With her on the brief were John Payton,

Corp. Counsel, Charles L. Reischel, and Janet L. Maher, Deputies Corp. Counsel.

Before: MIKVA, Chief Judge, BUCKLEY and GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

In this "reverse discrimination" case, we are called upon to clarify a rule that we formulated twelve years ago in *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012 (D.C.Cir.1981). In *Parker*, we interpreted Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), to require a plaintiff attempting to make a prima facie case of "reverse discrimination" in employment to allege "background circumstances" sufficient to raise an inference of discrimination. This case poses the question whether a plaintiff's allegation that he was better qualified than the minority candidate chosen ahead of him for promotion can constitute sufficient background circumstances to establish a prima facie case, even in the absence of any external evidence that the employer was somehow motivated or inclined to discriminate against the majority. We hold that an allegation of superior qualifications, if supported by the facts, can constitute sufficient background circumstances to establish a prima facie case. A contrary ruling would defeat the purpose of Title VII—to shield the ideal of merit-based employment from the distortions of invidious discrimination.

## I. Background

Beginning in 1976, plaintiff Casper E. Harding worked as a carpenter at St. Elizabeth's Hospital in the District of Columbia ("St. Elizabeth's"), a public hospital operated by the U.S. Government. In 1986, he was promoted to "carpenter leader," a "non-supervisory position" within the Carpentry Shop of the Construction Section. Although the job was designated as non-supervisory, Mr. Harding in fact was responsible for leading a group of three or more carpenters (hence the term, "carpenter leader") on work assignments. Within the Construction Section were nine "shops," each with a separate foreman.

In 1987, the District of Columbia took over responsibility for St. Elizabeth's. The District reorganized the Construction Section, merging the Carpentry Shop and the Upholstery Shop. Robert Waid, formerly Carpentry Shop Foreman, became Carpentry/Upholstery Shop Foreman. On April 24, 1988, Mr. Waid was promoted, leaving a vacancy at the Carpentry/Upholstery Shop Foreman position. The Hospital posted a vacancy announcement on November 1, listing six qualification requirements (none physical), of which the most important was "ability to supervise." This qualification was so important as to be considered a "screen-out" requirement, meaning that any applicant without the ability to supervise would not be hired. Four candidates applied for the job: Plaintiff Casper Harding, a white man; Acquanetta Haywood–Brown, a black woman, who was employed as the Upholstery Shop Foreman; Nathaniel Cary, a black man, carpenter; and Christopher Settle, a black man, carpenter. Of these employees, only Ms. Brown held a "supervisory" position at the time of the applications.

A Qualifications Review Panel ("QRP") evaluated the candidates and rated three, Mr. Harding, Ms. Brown, and Mr. Cary, "highly qualified." Of all the candidates, Ms. Brown received the highest rating, scoring 22 of 24 possible points. Mr. Harding and Mr. Cary each received 20 points. The QRP submitted its report to Vladimir Roubachewsky, a white man, the selecting official, who interviewed the three "highly qualified" candidates. Mr. Roubachewsky selected Ms. Brown for the position. That selection was approved by Mr. Roubachewsky's supervisor, Lawrence Whitney, a white man. Ms. Brown's promotion was effective February 12, 1989.

In May 1989, Mr. Harding applied for medical disability due to osteoarthritis, a degenerative joint disease. Mr. Harding had submitted a doctor's statement of his condition (dated September 7, 1988) to his employer, and his doctor had stated that Mr. Harding's condition would worsen and that he would not be able to work as a carpenter for

much longer. Mr. Harding—by then unable to bend, kneel, or lift anything above his waist, and unable to climb ladders or stairways without great pain—retired on medical disability in January, 1990.

On July 18, 1990, Mr. Harding filed this action in the United States District Court for the District of Columbia, alleging that defendants had denied him the position of Carpentry/Upholstery Shop Foreman because of his race, in violation of Title VII. Upon Defendants' motion for summary judgment, the district court dismissed this suit on the ground that Mr. Harding had failed to state a prima facie case of discrimination as required by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Looking to this court's precedent interpreting the *McDonnell Douglas/Burdine* standard for "reverse discrimination" cases, and particularly our opinion in *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012 (D.C.Cir.1981), the district court held that Mr. Harding had failed to plead "background circumstances" showing a likelihood of reverse discrimination. Because, according to the district court, Mr. Harding had alleged only that his qualifications were "equal to" Ms. Brown's, and because he had alleged no other facts creating an inference of discrimination, the district judge held that he had failed to meet the requisite burden.

Mr. Harding appeals. He argues that the district court mischaracterized his claim as one of "equal qualifications," when in fact Mr. Harding claimed that his qualifications were *superior* to Ms. Brown's. Mr. Harding argues that a claim of superior qualifications raises an inference of discrimination sufficient to state a prima facie case.

## II. Discussion

For Title VII disparate treatment cases, the Supreme Court has articulated the *McDonnell Douglas/Burdine* test to allocate the burdens of proof. Under this standard, the plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of unlawful discrimination.

If the plaintiff makes that showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Finally, if the employer makes its showing, then the burden returns to the plaintiff to prove that the employer's asserted reason is pretextual. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The present case ended at the first step: the district judge found that Mr. Harding had not made his prima facie case. Accordingly, she dismissed the action without requiring Mr. Harding's employer to articulate a legitimate, nondiscriminatory reason for promoting Ms. Brown instead of Mr. Harding.

In the ordinary race discrimination case, in which a minority plaintiff accuses his employer of discriminating in favor of non-minority applicants, the Supreme Court has held that the plaintiff may make a prima facie case by showing:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). These criteria are "flexible," and must be adjusted to the facts of the case at hand. *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13. But the general idea is always the same: "The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected *under circumstances which give rise to an inference of discrimination.*" *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094 (emphasis added). This standard is "not onerous"; it serves only to "eliminate[ ] the most common nondiscriminatory reasons for the plaintiff's rejection," thus justifying a requirement that the employer come forward with an explanation. *Id.* at 253–54, 101 S.Ct. at·1093–94.

Thus, in an ordinary discrimination case, in which the plaintiff is a member of a minority group, an "inference of discrimination" arises when the employer simply passes over the plaintiff for a promotion to a position for which he is qualified. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. No such inference arises when, as in this case, the plaintiff is a white man. Invidious racial discrimination against whites is relatively uncommon in our society, and so there is nothing inherently suspicious in an employer's decision to promote a qualified minority applicant instead of a qualified white applicant. Thus, in order to establish a prima facie case under Title VII, this Court requires a white plaintiff to show additional "background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Parker v. Baltimore & Ohio R.R.*, 652 F.2d 1012, 1017 (D.C.Cir.1981). This requirement is not designed to disadvantage the white plaintiff, who is entitled to the same Title VII protection as a minority plaintiff. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 278–80, 96 S.Ct. 2574, 2578–79, 49 L.Ed.2d 493 (1976). Instead, the background circumstances requirement merely substitutes for the minority plaintiff's burden to show that he is a member of a racial minority; both are criteria for determining when the employer's conduct raises an "inference of discrimination." *See Bishopp v. District of Columbia*, 788 F.2d 781, 786 (D.C.Cir.1986).

### A. *Superior Qualifications as Background Circumstances*

The evidence that this Court has found in the past to constitute "background circumstances" can be divided into two general categories: (1) evidence indicating that the particular employer at issue has some reason or inclination to discriminate invidiously against whites, *see Daye v. Harris*, 655 F.2d 258, 261 (D.C.Cir.1981) (minority nurses over-represented among promotees); *Bishopp v. District of Columbia*, 788 F.2d 781, 786–87 (D.C.Cir.1986) (among other factors, minority supervisors and proposed affirmative action plan); *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C.Cir.1983) (pressure on hiring authority to hire minorities and proposed affirmative action plan); and (2) evidence indicating that there is something "fishy" about the facts of the case at hand that raises an inference of discrimination. *See Daye*, 655 F.2d at 260–61 (plaintiff alleged "scheme" to fix performance ratings); *Lanphear*, 703 F.2d at 1315 (plaintiff was given "little or no consideration" for the promotion, and supervisor never fully reviewed qualifications of minority promotee); *Bishopp*, 788 F.2d at 786–87 (promotee was less qualified than four white plaintiffs and was promoted "over the[ir] heads ... in an unprecedented fashion"). Apparently, we have never had occasion to state clearly that the second type of "background circumstance" may create a prima facie case by itself. Accordingly, we will take this opportunity to hold precisely that. "Background circumstances" need not mean "some circumstance in the employer's background." On the contrary, other evidence about the "background" of the case at hand—including an allegation of superior qualifications—can be equally valuable.

It is true, as appellees argue, that we have never yet been confronted with a prima facie case based entirely upon the plaintiff's superior qualifications. But we see nothing in *Parker*, nor any of our cases, that would suggest superior qualifications are not enough. Indeed, such an interpretation would be inconsistent both with *Parker* and with the essential purpose of the "background circumstances" test: determining when an employer's conduct raises an inference of discrimination under the Supreme Court's *McDonnell Douglas/Burdine* standard.

Under that test, if a more qualified white applicant is denied promotion in favor of a minority applicant with lesser qualifications, we think that in itself raises an inference that the defendant is "that unusual employer who discriminates against the majority." *Parker*, 652 F.2d at 1017. A rational employer can be expected to promote the more qualified applicant over the less qualified, because it is in the employer's best interest to do so. And when an employer acts contrary to his apparent best interest in promoting a less-qualified minority applicant, it is more likely than not

that the employer acted out of a discriminatory motive. The *McDonnell Douglas/Burdine* allocation of the burden of proof relies on this very presumption. *See Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576–77, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978) (court should ask whether discriminatory motivation is "more likely than not," and employer who acts irrationally is presumed to have such motivation). As the Supreme Court has observed, "we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting." *Id.* at 577, 98 S.Ct. at 2949–50. Absent a legitimate reason for the employer's action, then, such an irrational promotion raises an inference of discrimination against the better-qualified non-minority applicant.

### B. *Mr. Harding's Showing of Superior Qualifications*

At the summary judgment stage, the plaintiff bears the burden of showing that there is a genuine issue of material fact on the issue of superior qualifications, because he would have the burden of establishing his prima facie case at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Although the facts are to be viewed in the light most favorable to the plaintiff as non-moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 245, 106 S.Ct. 2505, 2508, 91 L.Ed.2d 202 (1986), Mr. Harding nevertheless must support his allegations of superior qualifications with facts in the record; a mere unsubstantiated allegation of superior qualifications creates no "genuine issue of fact" and will not withstand summary judgment. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

The district court never reached the issue of whether Mr. Harding had established a genuine issue of fact as to his allegedly superior qualifications. The court characterized Mr. Harding's argument as an allegation of *equal* qualifications, and dismissed the claim as a matter of law because Mr. Harding alleged no "background circumstances." But Mr. Harding plainly alleged more than equal qualifications below: he alleged *superior* qualifications. Because we hold today that superior qualifications can provide a suffi-

cient showing of background circumstances, the district court should, on remand, decide whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," create a genuine issue of fact as to whether Mr. Harding's qualifications were in fact superior to Ms. Brown's. Fed.R.Civ.P. 56(c). If the court finds that a genuine issue exists, then it should hold that Mr. Harding has stated a prima facie case for purposes of summary judgment; the court should then proceed to the remainder of the *McDonnell Douglas/Burdine* test to determine whether summary judgment should be entered or whether the case should proceed to trial.

### III. Conclusion

The "background circumstances" requirement is not an additional hurdle for white plaintiffs. On the contrary, it is a faithful transposition of the *McDonnell Douglas/Burdine* test for ordinary race discrimination cases into the reverse discrimination context. As such, it ensures that white plaintiffs have the same rights as minority plaintiffs. For both, Title VII requires that they state a prima facie case, consisting of facts and circumstances sufficient to raise an inference of discrimination. "Background circumstances" means simply that in our society, where "reverse discrimination" is the exception, white plaintiffs must show more than the mere fact that they are white before their non-selection in favor of a minority candidate will raise an inference of discrimination. But the non-minority plaintiff who shows that he was better qualified for the position than the minority applicant whom the employer selected has done his job; he has stated sufficient background circumstances to establish his prima facie case. In this nation, where merit-based advancement is one of our highest values, there can be no other policy.

Accordingly, we reverse the summary judgment below and remand to the district court for a determination whether any genuine issues of material fact exist for trial.

*Reversed and remanded.*