**Sydney Chukwunna UGWUNNA, Plaintiff,**

v.

**NATIONAL ACADEMY OF SCIENCES, Defendant.**

**Civ. A. No. 94–1383 (JR).**

United States District Court, District of Columbia.

Oct. 13, 1995.

Sydney Chukwunna Ugwunna, Alexandria, VA, Plaintiff pro se.

William F. Causey, Tonia J. Powell, Washington, DC, and Audrey Byrd Mosley, National Academy of Sciences, Washington, DC, for Defendant.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff Dr. Sydney C. Ugwunna brings this action *pro se* alleging that defendant National Academy of Sciences discriminated against him on the basis of his race and national origin (Nigerian) in violation of Title VII of the Civil Rights Act of 1964. Because Dr. Ugwunna is appearing *pro se*, the Court has allowed him considerable leeway in the number, form and content of documents he has filed with the Court. In all that material, however, the only specific complaint Dr. Ugwunna makes is that he applied for an advertised position with the National Academy of Sciences and was not granted an interview. Interrogatories have been propounded and answered by both sides, and depositions have been taken by both sides. Defendant has moved for summary judgment.

The facts material to the issue upon which the Court's ruling turns are undisputed. The National Academy of Sciences created a new staff position on April 8, 1992. The new position had been requested by the Board on Biology of the Commission on Life Sciences of the National Research Council at NAS as a "Program Officer ... to handle several new projects (marine biotechnology and bio-based industrial products) as well as the ongoing projects on bioprocess engineering." The formal position description, which became the basis for the screening of applicants and the selection of the incumbent for the new position, was as follows:

"Administer projects dealing with marine biotechnology, biobased industrial products, and bioprocess engineering. This involves handling committees and all associated aspects of the projects including overseeing the preparation of final reports. Duties also include handling administrative and budgetary matters of these projects. Must have demonstrated understanding of the utilization of scientific information in decision-making and have ability to integrate data and select data for use by the committees. Must have effective verbal and written communication skills and have good organizational skills for handling multiple projects. Interpersonal skills to work with a variety of people is [sic] also important."

Dr. Ugwunna submitted his curriculum vitae to Dr. Eric Fischer. It was Dr. Fischer's responsibility to receive and review applications, to conduct interviews for the new program officer position, and ultimately to make the employment recommendation.

Dr. Fischer examined each resume received by NAS, screened them for the qualifications of the applicants, and decided which candidates would be called for an interview. Of the 42 individuals who applied, Dr. Fischer selected nine for interviews. Dr. Ugwunna was not one of them.

Dr. Fischer decided that Dr. Ugwunna did not meet the minimum qualification. Indeed, his curriculum vitae did not reflect any experience at all with the specialty fields listed at the very beginning of the position statement, "marine biotechnology, biobased industrial products, [or] bioprocess engineering."

Dr. Ugwunna asserts that his application responded to a different statement of the requisite qualifications, set forth in an internal position posting that read as follows:

"Qualifications: Ph.D. or equivalent preferably related to the biological sciences, bioengineering or biotechnology. At least one year related experience in technical project management; working knowledge of federal agencies highly desirable. Demonstrated ability to manage staff; develop new projects; and secure funds; simultaneously coordinate and supervise the com-

pletion of ongoing projects; and analyze and report technical information. Must also demonstrate effective planning, organization, and oral and written communications skills."

Although Dr. Ugwunna's reliance upon the language of this internal posting might resolve the question of whether he even has the right graduate degree (his Ph.D. is "related to the biological sciences"), in other respects the posting establishes a more difficult set of qualifications than does the position description, and Dr. Ugwunna does not even come close to meeting them. His argument that he has "at least one year related experience in technical project management" amounts to word play: Dr. Fischer agreed in his deposition that Ph.D. level research in biology is "technical"; Dr. Ugwunna is experienced in Ph.D. level research in biology; therefore, he asserts, he has "managed technical projects." That attempted syllogism is specious and flouts the context of the internal posting.

In order to fit himself within the posting's stated preference for "working knowledge of federal agencies," Dr. Ugwunna ventures even further from the facts and from sound reasoning. He recites his service as an advisor to the federal government of *Nigeria* for nine years (in matters of agriculture, environmental sanitation and conservation and public health, not in bioengineering and biotechnology); and he asserts that his service as social worker for the State of Nebraska for four years fulfilled the criterion of "a working knowledge of federal agencies."

Dr. Ugwunna's discrimination case fails as a matter of law because he has failed to make the requisite threshold showing that he was qualified for the position he sought. Moreover, Dr. Ugwunna has not even tried to show that someone less qualified than himself was hired for the position he sought. Dr. Ugwunna's failure to adduce evidence either that he himself was qualified for the position he sought or that he was more qualified than the person who was hired for the position, make it impossible for him to establish a *prima facie* case of employment discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Harding v. Gray,* 9 F.3d 150, 152 (D.C.Cir.1993). Dr. Ugwunna's response to this fundamental point—that he did not show that he was qualified—is passionate but fails utterly to identify a genuine issue of material fact. His claim to be an eminent cellular biologist and parasitologist is not disputed, but it is not material to the issue of his qualifications for the specific position he sought. On this threshold issue there is no evidence in the record on which a jury could reasonably find for plaintiff. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Because plaintiff has failed to sustain his burden of identifying a genuine issue of fact material to his *prima facie* case, the motion for summary judgment of defendant National Academy of Sciences must be granted. An appropriate order is issued with this memorandum.

### ORDER

Upon consideration of the motion of defendant for summary judgment and plaintiff's response thereto, and upon a review of the entire record, it appearing that the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that defendant is entitled to a judgment as a matter of law, it is **ORDERED** that the motion for summary judgment is granted and that this case be and the same is hereby dismissed.