Michigan Supreme Court
Lansing, Michigan

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 11, 2004**

MICHAEL LIND,

    Plaintiff-Appellant

v                                 No. 122054

CITY OF BATTLE CREEK,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

Plaintiff, a white police officer, alleges that defendant violated the Michigan Civil Rights Act, MCL 37.2202(1)(a), when it promoted a black officer, rather than plaintiff, to the supervisory position of police sergeant on the basis of race.[1] The issue is whether such a claim of "reverse discrimination" must satisfy standards different from those required of other claims of discrimination. Having granted leave to appeal and heard argument, this Court concludes as follows:

---

[1] On the basis of scores on written and oral examinations and seniority, plaintiff was rated second among the top five eligible officers and the black officer, who was promoted, was rated fifth. Pursuant to a collective bargaining agreement, the city was permitted to select any one of the top five scoring candidates.

(1) MCL 37.2202(1)(a) provides that "[a]n employer shall not . . . discriminate against an individual with respect to employment . . . because of . . . race . . . ."

(2) MCL 37.2202(1)(a) draws no distinctions between "individual" plaintiffs on account of race.

(3) The Court of Appeals, in reliance on *Allen v Comprehensive Health Services*, 222 Mich App 426, 429-433; 564 NW2d 914 (1997), held that a "majority" plaintiff in a "reverse discrimination" case, in order to make a prima facie showing, must, in addition to satisfying the obligations of "minority" plaintiffs in discrimination cases, also present "background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against the majority . . . ."[2]

(4) *Allen* draws a distinction between plaintiffs on account of race under MCL 37.2202(1)(a), and is thus inconsistent with our Civil Rights Act.[3] Therefore, *Allen* is overruled.[4]

---

[2] Unpublished opinion per curiam, issued July 9, 2002, p 2 (Docket No. 227874).

[3] While *Allen* involved a gender discrimination, rather than a race discrimination, claim, it held broadly that "reverse discrimination" plaintiffs under the Civil Rights Act must satisfy the "background circumstances" standard.

[4] Because we overrule *Allen*, it is unnecessary to address the additional question posed by this Court's grant order, i.e., whether *Allen's* "background circumstances" standard is consistent with the equal protection clauses of

2

In response to Justice Cavanagh's dissent, we observe that this opinion is short, not because we disagree with the dissent concerning the significance of this issue, but because *Allen* is so clearly contrary to the language of Michigan's Civil Rights Act. We are uncertain how many pages the dissent believes are required to explain that "individual" means "individual." Further, we note that in its much longer opinion, the dissent, unlike the majority, never actually bothers to decide the issue before this Court—whether *Allen's* "background circumstances" standard is consistent with Michigan's Civil Rights Act.

Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the circuit court for further proceedings consistent with this opinion.[5]

> Stephen J. Markman
> Maura D. Corrigan
> Elizabeth A. Weaver
> Clifford W. Taylor
> Robert P. Young, Jr.

---

the Michigan Constitution, Const 1963, art 1, § 2 ("No person shall be . . . discriminated against . . . because of . . . race . . . .") and the United States Constitution, Am XIV, § 1 ("[N]or shall any State . . . deny to any person . . . the equal protection of the laws."). That is, because we conclude that applying different standards to different racial groups in order to determine whether discrimination has been established violates the Michigan Civil Rights Act, we need not determine whether applying different racial standards also violates the equal protection clauses.

[5] In response to Justice Kelly's dissent, we note that we are not concluding that plaintiff did or did not establish a prima facie case of discrimination; rather, we are simply concluding that the trial court applied the wrong standard in determining whether plaintiff established a prima facie case of discrimination.

# STATE OF MICHIGAN

## SUPREME COURT

MICHAEL LIND,

    Plaintiff-Appellant

v                                        No. 122054

CITY OF BATTLE CREEK,

    Defendant-Appellee.

_____

YOUNG, J. (*concurring*).

I fully concur in the majority opinion, but write separately to note, on this fiftieth anniversary of the decision in *Brown v Bd of Education*,[1] how singular and troubling is the dissenting view of my two colleagues.

It is hard to reconcile the logic of the dissenters' position when juxtaposed to the language of our Michigan Civil Rights Act and our state constitution without recalling Orwell's chilling refrain: "all [citizens] are equal, but some [citizens] are more equal than others."[2]

Fifty years after the United States Supreme Court declared in *Brown* that the government could no longer use

---

[1] *Brown v Bd of Education*, 347 US 483; 74 S Ct 686; 98 L Ed 873 (1954).

[2] Orwell, *Animal Farm* (New York: New American Library, 1996), ch 10, p 133.

consideration of race to disadvantage any of its citizens, our two dissenting colleagues have announced precisely the contrary position. Our dissenting colleagues have advocated that the *judicial* branch of government require persons of one race to bear a higher burden of maintaining an employment discrimination case than persons born of another race.

This is a concept worth repeating for emphasis, for no citizen of this state should miss the import of the dissents' view. Our dissenting colleagues maintain that, under a statute that explicitly prohibits employment discrimination "because of" race, some Michigan citizens must bear a higher burden to maintain such a lawsuit precisely *because of their race*.

Not only does the dissents' position constitute an offense against the very protections our Civil Rights Act provides, our dissenting colleagues are conspicuously silent about the constitutional implications of a governmental policy that places higher burdens on one set of citizens because of their race. The Michigan Equal Protection Clause, Const 1963, art 1, § 2, unlike the federal counterpart contained in the Fourteenth Amendment, *explicitly* prohibits discrimination on the basis of race:

> "No person shall be denied the equal protection of the laws . . . because of . . . race . . . ."

2

I do not challenge the good intentions of my dissenting colleagues; I do challenge their Orwellian racial policy preferences.

Robert P. Young, Jr.

MICHAEL LIND,

    Plaintiff-Appellant,

v                                      No. 122054

CITY OF BATTLE CREEK,

    Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

    I must dissent, not only from the majority's holding, but also from Justice Young's assertion that we should turn a blind eye to racism. How I wish we all could live in Justice Young's utopian society where all races are treated equally, but I cannot ignore reality. I urge the reader to look beyond the surface appeal of Justice Young's simplistic argument and examine not only the text, but also the *context* of the Civil Rights Act. It is with regret that I acknowledge the relevance today of Clarence Darrow's closing argument at the 1926 trial of Detroiter Henry Sweet.[1] In discussing the tragedy, injustice, and

---

[1] Mr. Sweet was on trial for firing a fatal shot into a crowd of white people who were attempting to drive African-Americans from their homes in "white neighborhoods." He was acquitted.

oppression faced by African-Americans, he stated: "'The law has made him equal, but man has not. And, after all, the last analysis is what has man done?—and not what has the law done?'" Peterson, ed, *A Treasury of the World's Great Speeches* (New York: Simon and Schuster, Inc, 1965), p 740. This still rings true today.

Without any discussion of the relevant case law, this Court today overrules *Allen v Comprehensive Health Services*, 222 Mich App 426; 564 NW2d 914 (1997). The cursory nature of the majority opinion shows a complete lack of respect for the importance of today's decision and the impact it will have on civil rights.

The majority overrules *Allen* because that case draws a distinction between plaintiffs on the basis of a minority class characteristic or trait, while the text of Michigan's Civil Rights Act does not. Because today's decision perverts the purpose of the Civil Rights Act and ignores precedent from this Court and the United States Supreme Court, I must respectfully dissent.

I. FACTS AND PROCEEDINGS

Because the majority opinion omits the relevant facts and circumstances, I provide them here. Plaintiff, a white male, filed this discrimination complaint following the promotion of a minority male to the position of sergeant at

the Battle Creek Police Department. The procedure for promotions requires candidates to score at least seventy percent on a written examination and to successfully complete an oral examination. Candidates are ranked on the basis of their performance on these examinations and, pursuant to a collective bargaining agreement, defendant may choose any of the five top candidates from the list. Plaintiff and the minority candidate who was awarded the sergeant's position in question were both in the top five on the eligibility list; plaintiff was ranked second at the time of the promotion and the minority candidate was ranked fifth.

At the close of discovery, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10). The trial court applied the background circumstances test from *Allen* and granted defendant's motion. Plaintiff filed a motion for reconsideration after learning of the city's affirmative action plan. The trial court denied plaintiff's motion for reconsideration, finding the affirmative action plan was never implemented by the city, and, even if it had been in place, it was not applicable to decisions pertaining to promotions.

Plaintiff appealed and the Court of Appeals affirmed the trial court's grant of summary disposition.[2] The Court of Appeals applied the test from *Allen* and agreed with the trial court that plaintiff failed to provide sufficient evidence to create an issue of fact regarding whether defendant was the unusual employer who discriminates against the majority.

Plaintiff appealed to this Court and we granted leave, directing the parties to address whether the *Allen* "background circumstances" test is consistent with Michigan's Civil Rights Act (CRA), MCL 37.2101 *et seq.*, and, if so, whether it violates the Equal Protection Clause of the Michigan Constitution or the United States Constitution. 468 Mich 869 (2003).

## II. STANDARD OF REVIEW

This Court stated the applicable standard of review in *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001), in which we applied the test from *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), to a racial discrimination claim:

> We review de novo a trial court's decision on a motion for summary disposition. A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support of a

---

[2] Unpublished opinion per curiam, issued July 9, 2002 (Docket No. 227874).

claim. After reviewing the evidence in a light most favorable to the nonmoving party, a trial court may grant summary disposition under MCR 2.116(C)(10) if there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 453; 597 NW2d 28 (1999).

### III. ANALYSIS

Michigan's CRA, at MCL 37.2202(1), provides that "[a]n employer shall not . . . (a) discriminate against an individual with respect to employment . . . because of . . . race . . . ." This language mirrors Title VII of the federal Civil Rights Act of 1964, which reads in pertinent part:

> It shall be unlawful employment practices for an employer . . . (1) . . . to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race . . . . [42 USC 2000e-2(a).]

In some discrimination cases, there is direct evidence of racial bias. But in most discrimination cases, there is no direct evidence. Recognizing this, the United States Supreme Court developed the *McDonnell Douglas* framework for examining discrimination claims where direct evidence of racial bias is lacking. *McDonnell Douglas, supra*.

Under the *McDonnell Douglas* test, a plaintiff must first offer a prima facie case of discrimination. To create a presumption of discrimination a plaintiff must present evidence "(i) that he belongs to a racial minority;

5

(ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, *supra* at 802. Once the plaintiff has created a presumption of discrimination, the burden then shifts to the defendant to rebut that presumption by showing that there was a legitimate, nondiscriminatory reason for the employment action.

In *Hazle*, this Court applied the above framework to a racial *discrimination* claim filed pursuant to the CRA. The plaintiff in *Hazle* was required to present evidence that

> (1) she belong[ed] to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. [*Hazle, supra* at 463.]

In applying the *McDonnell Douglas* framework, this Court recognized that varying facts in discrimination cases require courts to tailor the *McDonnell Douglas* framework to "fit the factual situation at hand." *Hazle, supra* at 463 n 6.

Strict application of the *McDonnell Douglas* framework would preclude all reverse discrimination claims without

6

direct evidence of discriminatory bias. Because a majority plaintiff cannot prove that he belongs to a protected minority and because the United States Supreme Court has recognized that the federal civil rights act is not limited to minorities,[3] courts have adapted the first prong of the *McDonnell Douglas* test for reverse discrimination claims. However, the United States Supreme Court has not addressed the test to be used for reverse discrimination claims and there is no consensus among the federal circuit courts of appeals regarding how the *McDonnell Douglas* test should be adapted for reverse discrimination claims.

There are three general approaches followed by the federal circuits. The approach followed by a majority of the circuits is the "background circumstances" test, which requires a majority plaintiff to show background circumstances that support the suspicion that the defendant is the unusual employer who discriminates against the majority. This approach is followed by the United States Courts of Appeals for the District of Columbia, and the Sixth, Seventh, and Eighth circuits. *Parker v Baltimore & Ohio R Co*, 209 App DC 215; 652 F2d 1012 (1981); *Murray v*

---

[3] *McDonald v Santa Fe Transp Co*, 427 US 273, 278-279; 96 S Ct 2574; 49 L Ed 2d 493 (1976).

*Thistledown Racing Club, Inc*, 770 F2d 63, 66-68 (CA 6, 1985); *Pierce v Commonwealth Life Ins Co*, 40 F3d 796, 801 (CA 6, 1994); *Mills v Health Care Service Corp*, 171 F3d 450, 457 (CA 7, 1999); *Duff v Wolle*, 123 F3d 1026, 1036-1037 (CA 8, 1997).  The second approach only requires a majority plaintiff to prove that he is a member of "a class."  This approach is followed by the Third and Eleventh circuits.  *Iadimarco v Runyon*, 190 F3d 151, 163 (CA 3, 1999); *Wilson v Bailey*, 934 F2d 301, 304 (CA 11, 1991).  The third approach allows a majority plaintiff to state a prima facie case in one of two ways, by using the "background circumstances" test or by showing "indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status [as a member of the majority] the challenged action would have favored the plaintiff . . . ."  *Notari v Denver Water Dep't*, 971 F2d 585, 589 (CA 10, 1992).  This test was developed by the Fourth Circuit in a traditional discrimination case and applied by the Tenth Circuit in the reverse discrimination context.  *Holmes v Bevilacqua*, 794 F2d 142, 146 (CA 4, 1986); *Notari, supra*.

### A. The "Background Circumstances" Test

The "background circumstances" test was created by the Court of Appeals for the District of Columbia Circuit

8

because the United States Supreme Court noted that the *McDonnell Douglas* factors have to be adjusted to fit varying factual scenarios and because strict application of the framework would eliminate all reverse discrimination claims. *Parker*, 652 F2d 1017. Under the "background circumstances" test a majority plaintiff claiming reverse discrimination can meet the first prong of establishing a prima facie case "when background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id*. at 220. Generally, "background circumstances" can be shown by evidence indicating that the employer has some reason or inclination to discriminate against the majority or by evidence indicating that there is something suspect about the particular case, which raises an inference of discrimination. See *Harding v Gray*, 9 F3d 150 (DC Cir, 1993).

### B. THE "MEMBER OF A CLASS" APPROACH

Some courts have criticized the "background circumstances" test and have applied their own adaptations of the *McDonnell Douglas* framework. The adaptation followed by the Third Circuit and the Eleventh Circuit essentially eliminates the first prong of the *McDonnell Douglas* framework. This adaptation was first applied by

9

the Eleventh Circuit in *Wilson*, in which the court altered the first prong of the *McDonnell Douglas* test by requiring the plaintiff to prove that he belonged to "a class," not a protected class or a minority class, simply a class. The same standard was applied by the Third Circuit in *Iadimarco*. The Third Circuit, held that

> a plaintiff who brings a "reverse discrimination" suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude . . . that the defendant treated plaintiff "less favorably than others because of [his] race, color, religion, sex, or national origin." *Furnco* [*Constr Co v Waters*, 438 US 567, 577; 98 S Ct 2943; 57 L Ed 2d 957 (1978)]. [*Iadimarco, supra* at 163.]

## C. THE *NOTARI* ALTERNATIVE

The Fourth Circuit and the Tenth Circuit apply yet another variation of the *McDonnell Douglas* framework to reverse discrimination claims. See *Holmes, supra* at 146; *Notari, supra* at 589. This test acknowledges the presumption of discrimination implicit in *McDonnell Douglas*, but allows a reverse discrimination plaintiff to prove either background circumstances *or* specific facts that support a reasonable inference that, but for plaintiff's status as a member of the majority, the challenged decision would not have been made.

## IV. CONCLUSION

The diversity of opinion among the federal circuits is evidence of the difficulty and complexity of this issue, yet the majority feels compelled by the text of Michigan's Civil Rights Act to dismiss this issue with no analysis of the relevant case law. The text of the act also compels Justice Young to assert that viewing things as they actually are is tantamount to discrimination. Today's majority and Justice Young both fail to acknowledge the historical context in which the Civil Rights Act was passed, as well as the pervasive and continuing discrimination rooted in that historical context. The majority remands this case to the circuit court with no guidance other than the fact that the "background circumstances" test should not be used. I respectfully dissent.

Michael F. Cavanagh

# STATE OF MICHIGAN

## SUPREME COURT

MICHAEL LIND,

    Plaintiff-Appellant,

v                               No. 122054

CITY OF BATTLE CREEK,

    Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

I agree fully with Justice Cavanagh's dissent. I write separately to state my additional reasons for supporting an affirmance of summary disposition for defendant.

### Plaintiff Failed to Establish a Prima Facie Case

Under any employment discrimination test, plaintiff failed to establish a prima facie case. Defendant had discretion to choose one of the candidates on the promotion list and had an established practice of not necessarily promoting people in the order they appeared on the list.

Defendant was not required to consider those attributes that plaintiff alleges made him a superior candidate to the employee who was in fact promoted. Plaintiff did not rebut defendant's asserted reliance on

the promoted employee's maturity and sense of service. Defendant was not required to forgo subjective criteria in making the employment decision, especially considering the critical role that police officers fill in society. Plaintiff failed to rebut defendant's race-neutral reasons for its employment decision. Plaintiff's failure to sustain his burden entitled defendant to summary disposition.

I disagree with the majority's rejection of the background circumstances test of *Allen*. *Allen v Comprehensive Health Services*, 222 Mich App 426; 564 NW2d 914 (1997). In addition, I note that, even absent *Allen*, plaintiff's claim must fall because plaintiff failed to refute defendant's legitimate nondiscriminatory basis for promoting another candidate.

The Background Circumstances Test
Should Not Be Discarded

The fact that Michigan's Civil Rights Act[1] creates no distinction based on a person's status as a member of the "majority" or the "minority" does not justify discarding the background circumstances test. Because it is entirely consistent with the purpose of the act, it should be retained.

---

[1] MCL 37.2101 *et seq.*

The majority's analysis suggests that this case involves a simple issue of the proper interpretation of § 202 of the civil rights act.[2]  However, the language of the act does not address the question presented here: what evidence must be presented to establish a prima facie case of discrimination.

This Court grappled with the question in earlier decisions.  See, e.g., *Lytle v Malady* (*On Rehearing*), 458 Mich 153, 172-178; 579 NW2d 906 (1998) (opinion by Weaver, J.); *Matras v Amoco Oil Co*, 424 Mich 675, 683-684; 385 NW2d 586 (1986).  It determined that, where there is no direct evidence of impermissible bias, a prima facie case of employment discrimination can be established through the burden-shifting framework in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

The background circumstances test is a modification of the *McDonnell Douglas* test.  The rationale for the test was

---

[2] That section, MCL 37.2202, provides in relevant part:

> (1) An employer shall not do any of the following:

> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

first articulated by the District of Columbia Circuit Court of Appeals in *Parker v Baltimore & Ohio R Co*, 209 US App DC 215; 652 F2d 1012 (1981). The *Allen* Court adopted it as its own, concluding that it was an appropriate modification of the *McDonnell Douglas* test.

The background circumstances test acknowledges that reverse discrimination cases involve different factual situations and different underlying prejudices than do traditional discrimination cases. The test recognizes at its base that the hostile discrimination present in *McDonnell Douglas* is not typically directed at members of the majority. *Allen*, *supra* at 431-432. I agree with the following reasoning from *Allen* that quotes *Parker, supra*:

> "The original *McDonnell Douglas* standard required the plaintiff to show 'that he belongs to a racial minority.' Membership in a socially disfavored group was the assumption on which the entire *McDonnell Douglas* analysis was predicated, for only in that context can it be stated as a general rule that the 'light of common experience' would lead a factfinder to infer discriminatory motive from the unexplained hiring of an outsider rather than a group member. Whites are also a protected group under Title VII, but it defies common sense to suggest that the promotion of a black employee justifies an inference of prejudice against white co-workers in our present society." [*Allen, supra* at 431-432, quoting *Parker, supra* at 220.]

The majority's rationale in overruling the background circumstances test is not in keeping with the progeny of

4

*McDonnell Douglas*. In mechanically applying the plain language doctrine of statutory interpretation, the majority subverts the purpose of the act and the Legislature's intent in writing it. They were to prevent discrimination against a person because of that person's membership in a certain class and "to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Radtke v Everett*, 442 Mich 368, 379; 501 NW2d 155 (1993), quoting *Miller v CA Muer Corp*, 420 Mich 355, 363; 362 NW2d 650 (1984).

In our society, demeaning acts of prejudice directed against whites because of their race are uncommon. Historically, whites have not suffered from pervasive racial oppression, discrimination, and stigmatization as have members of minority races. A national survey conducted in 1990 found that prejudice against whites continues to be relatively rare. Only seven percent of whites interviewed claimed to have experienced any form of racial discrimination. Schuck, *Affirmative action: Past, present, and future*, 20 Yale L & Pol'y R 1, 67 (2002). Conversely, with respect to racial minorities, "race unfortunately still matters." *Grutter v Bollinger*, 539 US 306; 123 S Ct 2325, 2341; 156 L Ed 2d 304 (2003).

The existence of this crucial distinction between the treatment of the majority and of the minority supported the *Allen* Court's adoption of the background circumstances test. Common experience in Michigan does not lead to the conclusion that, when an adverse employment decision is made regarding a white employee, it is based on race.

As a consequence, I would uphold the background circumstances test adopted in *Allen* and affirm the decision of the lower courts.

Marilyn Kelly