Keith B. CAMPBELL—EL, Plaintiff,

v.

DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 94–543.

United States District Court, District of Columbia.

Dec. 23, 1994.

Myles V. Lynk, Martha Jeanet Talley, James Patrick West, Dewey Ballantine, Washington, DC, for plaintiff.

Richard Stuart Love, Jacques Philippe Lerner, Office of Corp. Counsel, D.C., Washington, DC, for District of Columbia, Walter B. Ridley, David D. Roach and John J. Lynch.

Jacques Philippe Lerner, Office of Corp. Counsel, D.C., Washington, DC, for D.C. Dept. of Corrections and Margaret A. Moore.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on two motions: 1) Defendants' motion to dismiss the first amended complaint, or in the alternative, for summary judgment; and 2) Plaintiff's motion for leave to file a second amended complaint. Plaintiff is a District of Columbia prisoner and is presently incarcerated in the Medium Security Facility at Lorton Correctional Complex. Plaintiff's claims involve the period between August 1993 and June 14, 1994 during which he was incarcerated in the Maximum Security Facility at Lorton in Cellblock 5 due to his request for protective custody.

### MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

In his motion for leave to amend, Plaintiff seeks to narrow his case. Plaintiff requests

leave to amend to remove the District of Columbia Department of Corrections as a party defendant, to clarify that the individual defendants are being sued in their official capacity, and to delete the claim arising out of the loss or theft of Plaintiff's personal property when he was transferred from one to another facility. Defendants only opposition to this motion is that an amended complaint would be futile because the claims that would remain are not viable as evidenced by the Defendants' motion to dismiss/summary judgment.

Plaintiff makes the following claims. First, Plaintiff claims violations of his 5th and 8th Amendments rights and his rights under 42 U.S.C. § 1983, as well as violations of the conditions of a Consent Order. These claims are based on the terms of Plaintiff's confinement in protective custody at the Maximum Security Prison. Second, Plaintiff claims violations of the Religious Freedom Restoration Act ("RFRA"), the First Amendment, and 42 U.S.C. § 1983. Third, Plaintiff claims violations of the Equal Protection Clause of the Fifth Amendment based on Christian inmates receiving more favorable treatment.

## FACTUAL BACKGROUND

From August 1993 through June 14, 1994 Plaintiff resided in Cellblock 5 of the Maximum Security Facility. Plaintiff was not assigned to this facility for disciplinary reasons, but was there at his own request having requested to be placed in protective custody. Prisoners at the Maximum Security facility have the highest level of custody in the District of Columbia's prison system. Among others, the Maximum Security facility consists of prisoners who are disciplinary problems or who pose a threat to other prisoners or who request protective custody, such as Plaintiff. In this facility, prisoners are confined to their cells twenty-three hours a day, with a few exceptions. Plaintiff complains about the restrictive nature of his confinement. He also alleges that he does not have sufficient reading materials nor appropriate winter clothing.

Plaintiff as a follower of the Moorish Science Temple of America, Inc. religion ("MSTAI") also complains about burdens on his religious freedom rights. Plaintiff has been the Grand Sheik of the religion which is supposed to meet twice a week, on Fridays and Sundays, for fellowship and to reaffirm their religious beliefs.

While Plaintiff was in Maximum Security, the administrators imposed a new policy for Maximum Security cellblocks. The policy restricts the number of prisoners who may gather together at one time to ten or twelve depending on the cellblock. In Cellblock 5, where Plaintiff resided, the rule limited the group to ten prisoners. The "10/12" Rule applies to all regularly-scheduled prisoner activities, including group prayer. Pursuant to a January 4, 1993 memorandum to Warden David Roach from Willie Ceasar, the Chaplain of the prison, residents housed on the right side of the cellblocks would be permitted to attend activities involving religious services only on odd-numbered weeks, and the residents housed on the left side would be permitted to attend religious services only on even-numbered weeks.

Plaintiff contends that due to the "10/12" rule, he missed numerous prayer sessions and was not permitted to fulfill his official duties as the Grand Sheik of MSTAI. He also contends that Christians were treated more favorably in that the "10/12" rule was not applied to them.

## MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### *MOTION TO DISMISS STANDARDS:*

■ In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept as true each of the allegations in the complaint. The motion should not be granted unless it appears that the plaintiff can prove no set of facts entitling him to the relief sought in the complaint. *See, e.g., Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1977).

### *SUMMARY JUDGMENT STANDARDS:*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be ren-

dered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mere allegations or denials of the adverse party's pleadings are not enough to prevent issuance of summary judgment. The adverse party's response to the summary judgment motion must "set forth specific facts showing that there is a genuine issue for trial."

The Supreme Court set forth the governing standards for issuance of summary judgment in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex,* the Supreme Court recognized the vital role that summary judgment motions play in the fair and efficient functioning of the judicial system:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1 . . . .
>
> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555. (citation omitted).

■ The plaintiff, as the non-moving party, is "required to provide evidence that would permit a reasonable jury to find" in his favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987) (*per curiam*) (citing *Celotex, supra*). The moving party is entitled to summary judgment where "the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary judgment shall be accepted as true unless the facts are controverted by the non-moving party through affidavits or other documentary evidence. See Local Rule 108(h).

In resolving the summary judgment motion, all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202. The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993).

Rule 56(f) of the Federal Rules of Civil Procedure recognizes that a summary judgment motion can be premature. Rule 56(f) provides:

> Should it appear from affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or deposition to be taken or discovery to be had
> . . .

Moreover, if material factual issues are not addressed, a motion for summary judgment would be premature. The material facts must be available before the court can rule on a summary judgment motion.

### *ANALYSIS AND DECISION:*

#### *1. Equal Protection Claim:*

■ Defendant argues that Plaintiff cannot prove his allegations that the "10/12" rule was not being invoked against Christians and that summary judgment should, therefore, be granted with respect to this claim. Defendant submits two declarations by prison officials where the declarants indicate that Christians have not been treated differently. Against this, Plaintiff states "to the best of [his] knowledge and belief" the "10/12" Rule was not applied to Christian inmates. Even though the Plaintiff's declaration is under

oath it is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. A mere, naked statement is not sufficient. To hold otherwise would render motions for summary judgments a nullity. Beliefs are not facts and Plaintiff to defeat defendant's motion for summary judgment must assert facts. This claim will be dismissed.

### 2. Restrictiveness of Confinement Claims

■ Plaintiff was confined in Maximum Security because he chose to place himself in protective custody, not because he was a discipline problem or posed a threat to other prisoners. Plaintiff asserts in his complaint that locking him in his cell for 23 hours per day, which is the policy for those prisoners in protective custody i) violates the Eighth Amendment by subjecting him to cruel and unusual punishment; ii) violates his right to due process of law under the Fifth Amendment because the Defendants made no finding of a disciplinary need to subject Plaintiff to this type of incarceration; iii) violates the requirements imposed on the District of Columbia by the final settlement and consent decree in *John Doe v. District of Columbia, et al.,* Civ. No. 79–1726 (March 23, 1984).

David Roach, the Warden of the Maximum Security Facility at the District of Columbia's Lorton Facility, described in detail the 23 hour lockdown policy:

> They [limited status prisoners such as Plaintiff] are confined to their cells for 23 hours each day, except for a few specified activities. They receive one hour of outdoor recreation per day, 5 days per week. The only other time they may be out of their cells is for one of the following purposes and for the maximum durations indicated: education classes (1 hour), attorney meetings (unlimited), medical purposes (unlimited), group prayer (2 hours), hygiene and telephone calls (20 min), visitation (1 hour for in-town visitors, 2 hours for out-of-town visitors), therapy sessions (90 min.), substance abuse counselling (1 hour) and art classes (90 min.).

See Declaration of Roach, filed July 6, 1994.[1] When they are out of their cells, "they are continually and directly supervised at all times."

Plaintiff also alleges in his proposed second amended complaint that his access to reading materials was severely restricted, that he received inappropriate winter clothing for purposes of his recreation hour and that he was prohibited from working.

■ The Eighth Amendment provides, "Excessive bail shall not be required, . . . nor cruel and unusual punishments inflicted." U.S. Constit.Amend. VIII. The Supreme Court set forth the standards for analyzing cruel and unusual punishment claims in *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A two prong analysis is invoked. The first prong is the objective inquiry as to whether the prisoner was deprived "of the minimal civilized measure of life's necessities." *Id.* at 298, 111 S.Ct. at 2324. The second prong is a subjective test—the Plaintiff must demonstrate that the prison officials acted with at least deliberate indifference. *Id.* at 298–301, 111 S.Ct. at 2324–25.

The Court finds that Plaintiff has failed to state a constitutional claim under the 5th Amendment due process or 8th Amendment cruel and unusual punishment clauses with respect to "lockdown policy." Plaintiff voluntarily placed himself in protective custody with its attendant lockdown policy. Reasonable exceptions have been made to the policy and the prisoners are directly supervised when they are outside their cells in order to ensure their safety. Safety is of paramount concern for those prisoners who place themselves in protective custody.

The potential among the prison population that violence may be directed towards other inmates is a well known fact. The recent high profile prison execution of Jeffrey Dahlmer shortly after he was placed in the general prison population is a case in point. The lockdown policy, which is applied in cases where prisoners seek protection from other prisoners, does not approach a violation of the prisoner's due process rights nor does

---

**1.** The Plaintiff does not controvert the Warden's statement.

it rise to the level of cruel and unusual punishment.

Plaintiff's allegations that he was not provided with reading materials, not given adequate winter clothing, and not allowed to work are not addressed in the Defendant's motion. As such, the Court is not in a position to evaluate these claims and the defendant's motion must be denied with respect to these 5th and 8th amendment claims.

As for the Plaintiff's claim involving the consent decree, the defendant argues that Plaintiff is collaterally estopped from relitigating issues of prison conditions that were litigated in Civil Action No. 79–1726. This argument, however, is made in a footnote in Defendant's brief and is not fully analyzed. The Court is not even informed as to the substantive nature of the prior case. As such, the Court cannot evaluate the argument that is made by the defendant and the court will not rule on the motion to dismiss with respect to this claim at this time.

### 3. Religious Freedom Claims:

Plaintiff claims that the "10/12" policy and its implementation substantially burdens his exercise of religion in violation of RFRA, 42 U.S.C. § 2000bb–1. Moreover, he claims the "10/12" policy violates his rights under the first amendment's freedom of religion clause and violates his rights under 42 U.S.C. § 1983.

■ The Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb, imposes strict scrutiny "in all cases where free exercise of religion is substantially burdened." In relevant part, RFRA provides:

(a) IN GENERAL—Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)

(b) EXCEPTION—Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

§ 2000bb–1. A prisoner can invoke RFRA where a prisoner can establish that there has been a substantial burden placed on his exercise of religion. See, e.g., Allah v. Menei, 844 F.Supp. 1056 (E.D.Penn.1994); Abdul–Ali v. Blanton, Civil Action No. 94–573–CRR (Memorandum Opinion, September 13, 1994).

■ The Supreme Court has held that "the proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to legitimate penological interests.'" Washington v. Harper, 494 U.S. 210, 223, 110 S.Ct. 1028, 1037, 108 L.Ed.2d 178 (1990) (citing Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)).

■ The Court is mindful of the need to assure the safety of the prison population. In his declaration Roach stated,

> For security reasons, there is a blanket prohibition on all regularly-scheduled gatherings of more than 10 or 12 unrestrained limited status prisoners at one time in one place, regardless of the amount of supervision and regardless of the activity. ¶ 8

Despite the Roach Declaration, the factual record is inadequate to enable the Court to rule on Defendant's motion. Discovery must be conducted and the factual record must be augmented in order for the Court to determine whether the Plaintiff's rights under RFRA were substantially burdened and, if so, whether the government used the least restrictive means for furthering a compelling government interest. The Court needs more information with respect to the MSTAI religion and its practices; the implementation of the "10/12" policy and its effect on the Plaintiff's religious freedom; the frequency with which prisoners were allowed to meet in the groups of 10 or 12 and the policy reasons for limiting the frequency of the meetings. Moreover, the Court needs a more detailed description by the government as to how this is the least restrictive means for furthering its goals.

Plaintiff's first amendment constitutional claim also survives Defendant's motion. As with the RFRA claim, the factual record needs to be more fully developed in order for the Court to assess the claims. While restricting the number of prisoners that can gather at one time is certainly rationally related to the government's interest in preserving the safety of the inmates and the guards at the jail, more information is needed with respect to the restrictions on the frequency with which such meetings are held. The "10/12" policy is more than just a limitation on the number who can gather in a group; the policy also restricts the number of meetings that can be held per week.

## CONCLUSION

The Court grants the Plaintiff's motion for leave to amend the complaint in so far as it narrows the Plaintiff's case.[2] The Court also grants the Defendants' motion(s) as to the 8th Amendment and the 5th Amendment Due Process (lockdown policy only) claims as well the Equal Protection claim. At the present time, the Court denies the Defendants' motion(s) as to the RFRA claim, the 1st Amendment claim and the claim that the consent order was violated. A better development of the record is needed to decide these claims.

---

**2.** The Second Amended Complaint is deemed to be filed and the Defendant's motion(s) is deemed

to be directed against the Second Amended Complaint.