**Laurack BRAY, Plaintiff,**

v.

**GEORGETOWN UNIVERSITY, Defendant.**

**Civil A. No. 95–0773.**

United States District Court, District of Columbia.

March 6, 1996.

56

Mary Todd, Washington, DC, Laurack Bray, Washington, DC, for Laurack D. Bray.

Lawrence White, Georgetown University, Washington, DC, for Georgetown University.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on defendant's motion for summary judgment. The case arose when plaintiff applied for a position as a career counselor at Georgetown University Law Center ("GULC"), but was not called in for an interview and did not get the job. Plaintiff, Laurack Bray, brought this case against Georgetown University, alleging racial discrimination in violation of 42 U.S.C. § 1981 and Title VII of the 1964 Civil

Rights Act.[1] Defendant responds that plaintiff has not established a prima facie case of racial discrimination, and has been unable to refute defendant's legitimate, non-discriminatory reasons for its challenged conduct.

## BACKGROUND

In the spring of 1992, GULC advertised to fill a position as a career counselor in the Office of Career Services. The vacancy was created when the incumbent counselor, a female African–American named Lee Cook, was promoted. GULC asked Ms. Cook to organize the search to fill the vacancy created by her departure. Ms. Cook prepared an announcement which read in part as follows:

The Georgetown University Law Center is seeking a Career Counselor for its Office of Career Services. This counselor will coordinate the Office's programs for minority affairs, foreign students and students interested in pursing masters degrees in law. The successful candidate will be interested in, and committed to, helping students and alumni identify and achieve their career goals. Candidates must be able to interact with a highly diverse student body.

**Required Qualifications:** Masters Degree in Counseling (or related field) or Juris Doctor. A minimum of three years of experience in law school or other professional school administration, law practice or counseling is preferred.

GULC sent the announcement to the National Association for Law Placement and to the career centers at many of the nation's leading law schools, including Howard University, plaintiff's alma mater. In response to the announcement, GULC received 42 applications, three of which were selected for interviews. One of the selectees was an African–American female who had worked as an attorney for the United States Department of Housing and Urban Development and had volunteered at Harvard to improve relations between members of the Black Law Students' Association ("BLSA") and foreign students pursuing graduate law degrees. She was also fluent in French and Haitian Creole. The second finalist was an Hispanic male who had worked as an employment recruiter at the Bank of Boston and as a pre-law adviser in Syracuse University's ("SU") career placement office. He served as founder and chairperson of the Latin American Law Students Association and was fluent in Spanish. The third selectee was an Asian–Hispanic male who had worked as an attorney in a large Washington law firm. He also had served as a member of the International Law Society while in law school, and had knowledge of French and Sinhala.

Plaintiff's resume indicated he met the minimum requirements of having a J.D. and a number of years experience in private law practice. In contrast to the resumes of the three finalists, Bray's resume did not show the same breadth of experience relevant to providing career counseling to minority students. Bray's resume did not indicate that he had ever been employed by a government agency, a large law firm, or any other corporate or institutional employer of the type which typically recruited at Georgetown. Nor did Bray's resume indicate that he had any career counseling experience, had worked with foreign students, or spoke or understood any foreign languages.

## SUMMARY JUDGMENT STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mere allegations or denials of the adverse party's pleadings are not enough to prevent issuance of summary judgment. The adverse party's response to the summary judg-

---

1. The complaint alleges discrimination based on race, gender and age. The Court previously granted defendant's partial motion to dismiss on the claims of gender and age discrimination on the ground that plaintiff had not exhausted his administrative remedies. In addition, as to plaintiff's claim of gender discrimination, the Court noted that plaintiff clearly could not establish a prima facie case since the individual ultimately hired for the position plaintiff sought was also male.

ment motion must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Pro. 56(e).

The Supreme Court set forth the governing standards for issuance of summary judgment in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex*, the Supreme Court recognized the vital need for summary judgment motions to the fair and efficient functioning of the justice system:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Pro. 1 . . .
>
> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555 (citation omitted).

The moving party is entitled to summary judgment where "the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex* at 323, 106 S.Ct. at 2552. Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary judgment shall be accepted as true unless the facts are controverted by the non-moving party through affidavits or other documentary evidence. See Local Rule 108(h).

In resolving the summary judgment motion, all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). The non-movant has met its burden of showing that a dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987) *(per curiam)* *(citing Anderson, supra)*.

## ANALYSIS AND DECISION

### I. BURDENS AND ORDER OF PROOF IN DISCRIMINATION CASES

The Supreme Court has articulated the order and burden of proof in Title VII cases as follows:

> First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reason but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### II. PLAINTIFF'S PRIMA FACIE CASE

To establish a prima facie case, "plaintiff must prove by a preponderance of the evidence that [he] applied for a position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The Supreme Court has articulated one appropriate model to establish such a prima facie case. Specifically, the plaintiff must show: (1) that he belongs to a racial minority; (2) that he applied and was

qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas Corp.* at 802, 93 S.Ct. at 1824.

Defendant claims that plaintiff has not shown that he was qualified for the job and thus has not made out an essential element of his prima facie case. Although defendant presents a persuasive case that Bray was not as qualified as the three applicants who were selected for the interviews, it is clear that Bray had at least the minimum qualifications for the job.[2] Bray had earned a Juris Doctor from Howard University School of Law, and had approximately five years experience in private practice.

■ The Court is not prepared to find that plaintiff has established a prima facie case of racial discrimination. The mere fact that Bray was not granted an interview even though he possessed the minimum qualifications for the job does not, by itself, "give rise to an inference of unlawful discrimination."

■ At a minimum, the Court would also require plaintiff to show that GULC knew or should have known that plaintiff was a member of a protected class.[3] However, since defendant has provided legitimate nondiscriminatory reasons for not selecting Bray for an interview, which plaintiff has been unable to show were pretextual, there is an additional basis for dismissing plaintiff's claim.

## III. DEFENDANT'S LEGITIMATE, NONDISCRIMINATORY REASONS

■ GULC has asserted legitimate, nondiscriminatory reasons for not selecting Bray as one of the three finalists for an interview. Ms. Cook indicated that she was looking particularly for applicants whose resumes demonstrated a significant commitment to providing student counseling in the college or university setting, as well as facility with foreign languages and sensitivity to the special cultural and educational needs of international students. Cook Decl. at ¶ 8. In contrast to the resumes submitted by the three finalists, Bray's resume did not indicate that he possessed the particular skills which GULC sought.

■ Plaintiff responds that the asserted reasons must be pretextual because he was not called for an interview even though he was highly qualified and because another highly qualified African–American was also denied an interview. This argument is without merit.

First, the Court notes that one of the three finalists was an African–American, and all were members of a racial minority. This fact alone suggests that GULC's asserted bases for selecting the finalists were not a pretextual cover designed to mask a true intent of excluding African–Americans but were an honest attempt to select in an efficient manner the candidate best-suited to the job.

---

2. Plaintiff asserts that he met both the minimum and preferred qualifications for the job. It is true that the GULC announcement stated that a minimum of three years experience was "preferred," but this was not the only qualification the GULC announcement indicated was desirable. The GULC announcement also indicated that the successful candidate must be interested in and committed to helping students and alumni identify and achieve their career goals, and be able to interact with a highly diverse student body. Plaintiff's resume did not indicate experience relevant to these qualifications.

3. The Supreme Court has recognized that the four-part test articulated in *McDonnell Douglas* is not necessarily exhaustive and that additional elements of proof may be appropriate in certain cases. *See Texas Dep't of Community Affairs,* 450

U.S. at 254 n. 6, 101 S.Ct. at 1094 n. 6 ("[T]his standard is not inflexible"); *McDonnell Douglas,* 411 U.S. at 804 n. 13, 93 S.Ct. at 1825 n. 13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). In *McDonnell Douglas,* which involved the refusal of an employer to rehire a black employee who had been laid off in the course of a general reduction in the employer's work force, the employer clearly knew of the employee's race. Where the facts do not clearly indicate that the employer knew that the applicant belonged to a protected class, this Court believes plaintiff, as part of his prima facie case, must also show that the employer had such knowledge.

■ Nothing in Title VII requires an employer to interview all qualified applicants who submit resumes in response to an advertised vacancy. The mere fact that plaintiff possessed some or even all of the qualifications contained in the vacancy announcement does not automatically entitle him to an interview. Title VII entitles plaintiff to fair consideration based on nondiscriminatory factors, and gives plaintiff the right not to be rejected for a position because of his race. The undisputed facts in this case make clear that GULC selected the three finalists based on legitimate, nondiscriminatory reasons.[4] Plaintiff has been unable to show that these asserted, nondiscriminatory reasons were pretextual.

Plaintiff would have federal court's become the personnel offices of all this nation's employers. Under plaintiff's logic, an employer would be required to interview and ultimately hire all qualified applicants, regardless of the employer's resources and personnel needs. Such a result is far beyond the intended reach of Title VII, and would make it impossible for businesses to compete effectively in today's marketplace.

Title VII, designed to exclude impermissible discrimination from personnel decisions, has in too many cases been used to involve this nation's courts in unnecessarily reviewing legitimate hiring decisions. Increasingly, employers must navigate through a litigation minefield each time they attempt to fill a vacancy, promote an outstanding employee, or terminate an employee whose performance has been unsatisfactory. Abuse of Title VII protections by disappointed job applicants has created ballooning litigation and has adversely affected legitimate claimants from obtaining the judicial attention they deserve.

Today's marketplace is highly competitive, where dozens of well-qualified applicants often vie for one position. While it may be a hard reality for some job seekers to accept, some qualified applicants will not survive the first cut. Every decision not to interview a possibly qualified applicant does not necessarily suggest impermissible discrimination or warrant filing a lawsuit in federal court.

Where, as here, the undisputed facts indicate that an employment decision was motivated by legitimate business considerations and not tainted by impermissible discrimination, summary judgment for the defendant is proper.

This Court has observed too many cases where an individual who has been rejected for a job or who has been fired from a position will make totally unsupported claims of discrimination. Indeed, some persons make multiple, non-substantiated claims, i.e., race, religion, gender, and age, in the same case in the hope that maybe one of the claims will "stick." It is clear to the Court that often these claims are not supportable. Because of the low threshold to sustain a *prima facie* case, the litigation often continues, causing a ballooning civil docket and forcing the trial of legitimate cases to be delayed. The time is overdue for our legislature to revisit the law in this area. At the minimum, better screening mechanisms and administrative processes are needed. The way claims are adjudicated under the Social Security system may be an appropriate method to be explored.

## CONCLUSION

For all of the foregoing reasons, the Court finds summary judgment should be issued for the defendant and the case will be dismissed. An appropriate order accompanies this memorandum opinion.

## ORDER

This matter comes before the Court on defendant's motion for summary judgment. For the reasons cited in the foregoing opinion, this Court finds that defendant is entitled to judgment as a matter of law. Accordingly, the Court hereby **ORDERS** that defendant's motion for summary judgment

---

4. These factual determinations are based on submitted affidavits, declarations, answers to interrogatories, the resumes of the plaintiff and the three finalists, and other documentary evidence. Plaintiff claims that some of the facts are disputed, but offers no appropriate evidentiary support for his contention.

be **GRANTED** and the case be **DIS-MISSED.**